[Cite as *In re Willcox*, 2011-Ohio-3896.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY


IN THE MATTER OF:                    CASE NO. 5-11-08

LEVI M. WILLCOX,

                                          **O P I N I O N**

ALLEGED DELINQUENT CHILD.



Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 21020420

Judgment Affirmed

Date of Decision:  August 8, 2011



APPEARANCES:

    *Nathan T. Oswald* **for Appellant**

    *Benjamin E. Hal,* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Levi M. Willcox ("Levi"), appeals the judgment of the Hancock County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for inducing panic in a school by pulling a fire alarm at Findlay High School. On appeal, Levi contends that the trial court's determination was against the sufficiency and manifest weight of the evidence, and that he was denied effective assistance of counsel at the adjudicatory hearing. For the reasons set forth below, the judgment is affirmed.

{¶2} On November 9, 2010, a complaint was filed alleging that Levi, then seventeen years old, was a delinquent child based upon one count of inducing panic in a school in violation of R.C. 2917.31(A)(1), a felony of the second degree if committed by an adult. The offense was filed as a delinquency count pursuant to R.C. 2152.02(F). The matter proceeded to trial on January 11, 2011. The trial court heard testimony from the following four witnesses testifying on behalf of the State.

{¶3} Greg Williamson, Assistant Principal at Findlay High School, testified that on October 29, 2010, the fire alarm at the high school was pulled. There was no fire and the false alarm necessitated the evacuation of 1,600 students and faculty. In addition to this disruption, the fire department and police department had to be dispatched to the school.

{¶4} Officer Tonya Miller, of the Findlay Police Department, testified that she was dispatched to the school as a result of the false alarm and spoke with several of the students, including Jere Crawford ("Jere"). Officer Miller testified that Jere advised her that that Levi had told a group of students that he had pulled the fire alarm. (Tr. p. 39.) She also spoke with Levi, the primary suspect, but he denied pulling the alarm and claimed that it was the "other boy" in the locker room.

{¶5} Joseph Box ("Joey") was a student who was changing in the locker room for seventh period gym class when he overheard Levi talking with two other students about how funny it would be to pull the fire alarm. Joey testified that he then saw Levi run in and pull the fire alarm, and then run back out. (Tr. p. 26.) After everyone left the building, Joey saw Levi talking to Jere and heard him commenting that "he needed to give the I.S.A. (in-school suspension assignment) students a break from being in the classroom all day long." (Tr. p. 28.)

{¶6} Jere testified that he was a friend of Levi's and he was in I.S.A. the day the fire alarm was pulled. Jere also testified that Levi had made a comment that *implied* that Levi had pulled the fire alarm, but Jere denied that Levi had specifically stated that he had done it.

{¶7} After hearing the evidence, the juvenile court adjudicated Levi a delinquent child. A dispositional hearing was held on February 10, 2011, and Levi

was permanently committed to the Ohio Department of Youth Services, with the commitment suspended on a day-to-day basis on the condition that Levi successfully completes a treatment program at the Juvenile Residential Center of Northwest Ohio. It is from this decision that Levi appeals, raising the following two assignments of error.

### First Assignment of Error

**The trial court erred by finding [Levi] delinquent of inducing panic because its determination was against the sufficiency and manifest weight of the evidence.**

### Second Assignment of Error

**This matter should be remanded back to the trial court due to [Levi's] ineffective assistance of counsel at the adjudicatory hearing.**

{¶8} In his first assignment of error, Levi contends the trial court's decision was based solely on circumstantial, ambiguous evidence and that no rational trier of fact could have found beyond a reasonable doubt that Levi committed the offense. And, after weighing all reasonable inferences from the evidence and considering the witnesses' credibility, he contends that the trial court's adjudication was against the manifest weight of the evidence.

{¶9} Pursuant to Juvenile Rule 29(E)(4) and R.C. 2151.35(A), a trial court may find a juvenile delinquent when the evidence demonstrates beyond a reasonable doubt that the child committed an act which would have constituted a

crime if committed by an adult. Therefore, the State was required to prove that

Levi violated R.C. 2917.31, which provides in pertinent part that:

> **(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:**
>
> **(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;**

R.C. 2917.31(A)(1). If the public place involved is a school or an institution of

higher education, inducing panic is a felony of the second degree. R.C.

2917.31(A)(5).

{¶10} When reviewing the sufficiency of the evidence, our inquiry focuses

primarily upon the adequacy of the evidence; that is, whether the evidence

submitted at trial, if believed, could reasonably support a finding of guilt beyond a

reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–

52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v.*

*Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of

review is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found all the essential elements of

the offense beyond a reasonable doubt. *Jenks,* supra; *Jackson v. Virginia* (1979),

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. This test raises a question of law

and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶11} Levi does not dispute the facts establishing that there was a false fire alarm causing the evacuation of the school, but asserts that he did not do it. He claims that the trial court's decision was based "solely on circumstantial conflicted evidence." (Appellant's Br., p. 10.) However, the record reflects that Joey unambiguously testified that he saw Levi pull the fire alarm and he was certain that it was Levi who did it.

> **Q.** **What did you observe that day, Joey? What happened?**
>
> **\* \* \***
>
> **A.** **I was changing my pants and him and two other students were discussing like how funny it would be to pull a fire alarm and as I was putting on my pants he ran in and pulled the fire alarm and ran back out.**
>
> **\* \* \***
>
> **Q.** **You're positive it was Levi here who pulled the fire alarm?**
>
> **A.** **Yes, sir.**
>
> **\* \* \***
>
> **Q.** **You saw [Levi] pull the fire alarm?**
>
> **A.** **Yes, sir.**
>
> **Q.** **And you heard [Levi] tell another individual that he had pulled the fire alarm?**

**A.    Yes, sir.**

(Tr. pp. 26-28.)

{¶12} Further questioning established that Joey did not have any grudges against Levi or any reason to lie about what Levi had done.  After viewing the evidence in a light most favorable to the prosecution, there was clearly sufficient evidence to establish all of the essential elements of the offense.

{¶13} Next, Levi argues that the decision was against the manifest weight of the evidence because the trial court found that the testimony of Jere was "a little bit ambiguous."  (Tr. p. 49.)  He also contends that the evidence was contradictory because Officer Miller testified that Jere had said that Levi had told him that "he pulled the fire alarm for the I.S.A. kids," whereas Jere denied that he had unequivocally made that statement.  Levi also tries to suggest that Joey was the one who pulled the fire alarm.

{¶14} A challenge to a conviction based on the manifest weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in*

*inducing belief.*" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a "thirteenth juror" in reviewing all of the evidence, it still must give due deference to the findings made by the fact-finder. *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

Id.

{¶15} First, we find that there was no evidence at trial to support Levi's implication that Joey pulled the fire alarm, nor was there any evidence that Joey had any motive to do so. Based upon the evidence presented and weighing the witnesses' credibility, the trial court determined that it did not find that Joey had "anything to gain or lose one way or the other" when he testified that he actually saw Levi pull the lever. (Tr. p. 49.)

{¶16} Athough Jere's testimony about Levi's comments was somewhat allusive, the trial court determined that his testimony "could have been interpreted

as Levi's bragging to him [about the] fact that he had gotten him out of an in-school suspension. (Id.)

> **Q.** **What did Levi tell you?**
>
> **A.** **Levi said someone needed to pull the alarm for the I.S.A. kids.**
>
> **\* \* \***
>
> **Q.** **And did he tell you he did it?**
>
> **A.** **I didn't hear him say anything about him doing it.** *He just made it seem like it was him.*
>
> **\* \* \***
>
> **Q.** **Did you tell an officer that Levi Willcox told you that he pulled the fire alarm?**
>
> **A.** **No. I didn't.**
>
> **Q.** **You did not? So if an officer said that, that officer would be lying?**
>
> **A.** **Yes. I specifically said** *he made it seem like he did.*

(Emphasis added.) (Tr. pp. 35-36.)

{¶17} Even if we were to assume, arguendo, that Levi did not specifically tell Jere that he had pulled the fire alarm, Levi's actions and words strongly implied that he was the person who had done it. That inference, coupled with the undisputed testimony of Joey, an independent eye-witness, that he had seen Levi pull the alarm, does not support Levi's assertion that the decision was against the

manifest weight of the evidence. We cannot say that the fact-finder lost its way or that the evidence weighed heavily against conviction.

{¶18} Based on the above, the evidence was sufficient to prove the essential elements of the offense beyond a reasonable doubt and the trial court's decision was not against the manifest weight of the evidence. Levi's first assignment of error is overruled.

{¶19} In the second assignment of error, Levi asserts that his attorney's conduct at the adjudicatory hearing fell below the objective standard of reasonableness when he failed to effectively cross-examine the State's key witness, Joey, the only other person in the locker room with Levi at the time the alarm was pulled. Levi contends that his trial counsel should have posed additional questions to Joey in order to cast doubt on Joey's identification of Levi as the perpetrator of the false alarm.

{¶20} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation; and (2) prejudice, meaning that there is a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus. "The

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

{¶21} There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that strategy and tactical decisions exercised by defense counsel are well within the range of professionally reasonable judgment and need not be analyzed by a reviewing court. *State v. Robinson* (1996), 108 Ohio App.3d 428, 670 N.E.2d 1077. "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 101.

{¶22} Levi avers that trial counsel was ineffective in his cross examination of Joey and proposes additional questions that he suggests his counsel should have asked Joey. However, the scope and extent of cross examination is a trial tactic, and it was up to his counsel to determine what questions would most effectively represent Levi's interests. Furthermore, we find that the proposed questions were relatively inconsequential (or had already been asked), and Levi did not indicate how the answers to those questions would have provided any evidence that would have changed the outcome of the trial.

{¶23} Levi's claim of ineffective assistance of counsel does not satisfy either prong of the *Strickland* test.  The second assignment of error is overruled.

{¶24} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/jnc**